IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KASSANDRA COOPER, individually
and as a representative of the class,

    Plaintiff,

v.

ACADEMY MORTGAGE
CORPORATION (UT),

    Defendant.

CIVIL ACTION NO.

1:16-CV-01546-LMM-CMS

## FINAL REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Academy Mortgage Corporation's Motion to Dismiss Plaintiff's Amended Complaint.[1] [Doc. 43]. This is the second motion to dismiss Defendant has filed in this case, arguing that Plaintiff's Amended Complaint should be dismissed for lack of subject matter jurisdiction. For the reasons discussed below, I **RECOMMEND** that Defendant's Motion be **GRANTED**.

---

[1] Within Defendant's motion to dismiss, Defendant has also asked the Court to strike certain portions of the Amended Complaint. [Doc. 43-1 at 23-25]. Within Plaintiff's response brief, Plaintiff seeks reconsideration of certain prior rulings of this Court. [Doc. 46 at 3-4, 9-10]. These requests were not separately filed or docketed as motions. For the reasons stated at the end of this Final Report and Recommendation, I recommend that these ancillary requests be denied.

# I.   <u>BACKGROUND</u>

This case concerns the disclosure forms that Defendant uses to initiate background checks in connection with its pre-employment screening of prospective employees.   The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq., requires that when a consumer report is obtained for employment purposes, applicants must be advised that the prospective employer may obtain a consumer report as part of the hiring process.   <u>See</u> 15 U.S.C. § 1681b(b)(2).   The statute provides, in relevant part:

> . . . a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes[.]

15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added).   This provision is commonly known as the FCRA's "stand-alone disclosure" requirement.[2]

_____

[2]   According to the Federal Trade Commission ("FTC"), the reason behind this requirement is to ensure that the disclosure appears conspicuously in a document not encumbered by any other information and to prevent the consumer from being distracted by other information side-by-side with the disclosure.   <u>Advisory Opinion to Leathers</u>, F.T.C. (Sept. 9, 1998), https://www.ftc.gov/policy/ advisory-opinions/advisory-opinion-leathers-09-09-98.      The   FTC   advises employers as follows: "Tell the applicant or employee that you might use information in their consumer report for decisions related to their employment. This notice must be in writing and in a stand-alone format.   The notice cannot be in

**A.     Allegations in Plaintiff's Amended Complaint[3]**

According to the Amended Complaint, on May 13, 2014, Plaintiff received an employment application package from Defendant that included, among other things, a document titled "Consent to Request Consumer Report & Investigative Consumer Report Information" (the "Consent Form").[4]  [Am. Compl. ¶¶ 13, 53; Doc. 1-1 at 7-11].  The opening statement on the five-page Consent Form informs

---

an employment application.  You can include some minor additional information in the notice, like a brief description of the nature of consumer reports, but only if it does not confuse or detract from the notice."  Using Consumer Reports: What Employers Need to Know (Oct. 2016), https://www.ftc.gov/tips-advice/business-center/guidance/using-consumer-reports-what-employers-need-know  (last visited Nov. 22, 2017).

[3] This fact statement is taken from the facts alleged in Plaintiff's Amended Complaint [Doc. 41 ("Am. Compl.")], which are accepted as true for purposes of resolving Defendant's motion to dismiss.

[4]  In her Amended Complaint and opposition to Defendant's motion to dismiss ("Opposition"), Plaintiff discusses another form that she received at the same time—the Employment Application.  [Am. Compl. ¶¶ 13, 15, 22, 36, 42, 53, 54, 57, 62, 80, 84; Doc. 46 at 3-4].  Plaintiff argues that the Employment Application also does not comply with the FCRA's disclosure requirement.  [Id.].  The Court previously found that "Plaintiff has not plausibly pled that the Employment Application is the same 'document' as the FCRA disclosure—the Consent Form."  [Doc. 40 at 10].  Because the Court has expressly ruled that the Employment Application is not a part of the FCRA disclosure and therefore not a part of Plaintiff's FCRA claim [id. at 10-11], I will not address the Employment Application in my analysis herein.  Plaintiff's improper and untimely request for reconsideration of the Court's prior ruling and Defendant's motion to strike portions of the Amended Complaint referencing the Employment Application will be addressed in Sections III.B. and III.C. below.

the applicant that Defendant utilizes a company called Sterling InfoSystems Inc.

("Sterling") to obtain consumer reports on prospective employees:

> I understand that **Academy Mortgage Corporation** ('COMPANY')
> will use **Sterling InfoSystems Inc., 249 West 17th Street, New
> York, NY 10011, (877) 424-2457** to obtain a consumer report and/or
> investigative consumer report ("Report") as part of the hiring process.
> I also understand that if hired, to the extent permitted by law,
> COMPANY may obtain further Reports from STERLING so as to
> update, renew or extend my employment.

[Doc. 1-1 at 7 (emphases in original)].  The Consent Form also contains additional

information about the nature of the investigation that Sterling would conduct, the

applicant's rights with respect to challenging the accuracy of any information

contained in the report, an authorization for Defendant to procure the report, and

the following statement:

> In order to verify my identity for the purposes of Report preparation, I
> am voluntarily releasing my date of birth, social security number and
> the other information and fully understand that all employment
> decisions are based on legitimate non-discriminatory reasons.

[Id.].  The Consent Form goes on to provide Sterling's contact information and

additional acknowledgements applicable only to residents of certain states.  [Id. at

7-8].  The Consent Form has spaces for the applicant to provide personal

information, including contact information, social security number, and driver's

license number.  [Id. at 9].  The last two pages of the Consent Form are titled "A

Summary of Your Rights Under the Fair Credit Reporting Act."  [Id. at 10-11].

4

The summary provides detailed information about the FCRA and consumers' rights thereunder.  [Id.].

Plaintiff claims that Defendant provided her with a written statement advising her that a consumer report would be obtained in connection with her application for employment with Defendant, but that the disclosure was not in the proper format; the document containing the disclosure allegedly included misleading, extraneous information, and therefore did not consist solely of the disclosure, as required by the FCRA.   [Am. Compl.  ¶¶ 58,  61-65,  67]. Specifically, Plaintiff alleges that the Consent Form does not comply with the FCRA's stand-alone disclosure requirement because it contains the following extraneous information:

1.  The statement that "I . . . fully understand that all employment decisions are based on legitimate non-discriminatory reasons."

2.  The state-specific notices on pages one and two.

3.  The contact information for Sterling and other information regarding the manner by which background information is gathered and how disputes are handled.

[Id. ¶¶ 23-33].  Plaintiff alleges that Defendant requested, and Sterling provided, a consumer report on her, and that Defendant ultimately hired her.  [Id. ¶¶ 59-60].

With regard to injury, Plaintiff generally alleges that she "experienced a concrete injury in the form of being deprived of a disclosure to which [s]he was

statutorily entitled as a result of Defendant's failure to comply with the FCRA's stand-alone disclosure requirement." [Am. Compl. ¶ 83]. Plaintiff alleges that she suffered a concrete informational injury because the Consent Form contained "misleading, confusing, inaccurate, extraneous, and distracting information[.]" [Id. ¶ 43]. Plaintiff also alleges that Defendant caused Plaintiff and the potential class members to suffer a concrete invasion of privacy injury by obtaining consumer reports that "contain[ed] misleading, confusing, inaccurate, extraneous, and distracting information[.]" [Id. ¶ 44]. There are no allegations that Plaintiff did not authorize the procurement of the consumer report, that the information contained in the consumer report was inaccurate, that Plaintiff herself was misled, confused, or distracted by the "extraneous information," or that she suffered any prejudice or harm as a result of having the report prepared and provided to Defendant.

## B.    Defendant's Prior Motion to Dismiss

On May 12, 2016, Plaintiff initiated this lawsuit by filing her original complaint against Defendant, alleging that Defendant willfully violated the FCRA by obtaining a consumer report for employment purposes without complying with the stand-alone disclosure requirement set forth in 15 U.S.C. § 1681b(b)(2)(A)(i) (the "Complaint"). [Doc. 1 ¶¶ 36, 40].

On August 10, 2016, Defendant filed its first motion to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff lacked standing under Article III of the United States Constitution, because she had not suffered an injury-in-fact. [Doc. 5-1 at 7-11]. Defendant also moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. [Id. at 11-19]. On January 4, 2017, I issued a Final Report and Recommendation ("R&R") recommending that Defendant's motion be granted and Plaintiff's Complaint be dismissed based on her failure to satisfy the injury-in-fact requirement of Article III standing. [Doc. 24].

On March 24, 2017, United States District Judge Leigh Martin May issued an order adopting in part the R&R, denying Defendant's motion to dismiss without prejudice and the right to re-file, and granting Plaintiff leave to file an amended complaint (the "Order"). [Doc. 40]. In the Order, Judge May concluded, in relevant part:

> The Court finds—after reviewing all of the parties' briefing, supplemental authorities, and the *amici* brief—that Plaintiff's standing cannot be resolved at this time, as the Court does not have enough facts to assess the extraneous information's harm. Namely, the Court needs additional facts regarding whether the inclusion of extraneous information was misleading in this case, especially in light of the fact that Defendant has brought a *factual* challenge to Plaintiff's standing and Plaintiff's Complaint as pled clearly contends the inclusion of the at-issue extraneous information violates the FCRA. Boergert v. Kelly Servs., No. 2:15-CV-04185-NKL, 2017 WL 440272, at *3 (W.D. Mo.

7

Feb. 1, 2017 (allowing Plaintiff leave to amend to allege how the inclusion of extraneous information was misleading)[.]

[Id. at 13-14 (emphasis in original)].

## C.    Defendant's Pending Motion to Dismiss

On April 7, 2017, Plaintiff filed her Amended Complaint, asserting a single claim (on behalf of herself and a class) against Defendant for willful violation of 15 U.S.C. § 1681b(b)(2)(A).  [Am. Compl. ¶¶ 91-96].  As discussed previously, in the Amended Complaint, Plaintiff alleges that the Consent Form contains "misleading, confusing, inaccurate, extraneous, and distracting information" in violation of the FCRA's stand-alone disclosure requirement.  [Id. ¶¶ 9, 14, 16-18, 21-22, 24, 26-29, 31-33, 43-44, 56, 58, 67, 72, 80, 82, 93].  For purposes of its motion to dismiss, Defendant does not dispute that Plaintiff has alleged that the Consent Form contains misleading, extraneous information.  [Doc. 48 at 9, n.1].

On May 12, 2017, Defendant filed the pending motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), again arguing that Plaintiff lacks standing under Article III because she has not suffered an injury-in-fact.[5]  [Doc. 43 at 4-10].  Plaintiff filed a response, and Defendant filed a reply.  [Docs. 46, 48].

---

[5]    Defendant also moves to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  Given my recommendation that the case be dismissed pursuant to Rule 12(b)(1), I have not reached the 12(b)(6) motion.

On September 8, 2017, I ordered the parties to provide supplemental briefs to precisely address the issue Judge May addressed in the prior Order.[6]  [Doc. 52]. The parties submitted their supplemental briefs on the issue [Docs. 54, 55], and Defendant's motion to dismiss is now ripe for consideration.

## II.   LEGAL STANDARD

Motions filed under Federal Rule of Civil Procedure 12(b)(1) question the district court's jurisdiction over the subject matter of the case.  Article III of the United States Constitution limits the jurisdiction of federal courts to the consideration of actual "cases" and "controversies."  U.S. Const. art. III § 2.  The party invoking federal jurisdiction bears the burden of demonstrating that she has standing to sue and must "clearly . . . allege facts demonstrating" standing.  See Warth v. Seldin, 422 U.S. 490, 518 (1975); see also Sweet Pea Marine Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005).  "If the plaintiff fails to shoulder that burden, the case must be dismissed."  Williams v. Poarch Band of Creek Indians, 839 F.3d 1312, 1314 (11th Cir. 2016).

Where the jurisdictional attack is based on the face of the pleadings, the Court accepts the allegations in the complaint as true for the purposes of the

---

[6]  I also asked Defendant to provide a chart outlining the changes, additions, and/or deletions made in the Amended Complaint as compared to the original Complaint [Doc. 52], which Defendant filed on September 29, 2017 [Doc. 53].

motion and looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction.  See Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).  Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  See Stalley v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008).  Such a dismissal is not a judgment on the merits and is entered without prejudice.  Id.

### III.   DISCUSSION

Defendant moves to dismiss Plaintiff's Amended Complaint, in relevant part, for lack of subject matter jurisdiction, arguing that Plaintiff has failed to plead Article III standing because she did not suffer a concrete injury-in-fact.  [Doc. 43-1 at 4-10].  In response, Plaintiff argues that she suffered concrete informational and privacy injuries based on Defendant's failure to comply with the FCRA's stand-alone disclosure requirement.  [Doc. 46 at 4-7].

### A.   Article III Standing

To demonstrate the "irreducible constitutional minimum" for Article III standing, a litigant must show three elements: (1) that she suffered an injury-in-fact that is both concrete and particularized; (2) that there is a causal connection between the injury and the conduct of which the plaintiff complains; and (3) that it

is likely that the injury will be redressed by a favorable decision. See Nicklaw v. Citimortgage, Inc., 839 F.3d 998, 1001 (11th Cir. 2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).   The plaintiff bears the burden of establishing each element.   See Lujan, 504 U.S. at 561.   Defendant does not challenge whether Plaintiff's alleged injuries are particularized or whether the second and third elements of standing can be met.   Defendant challenges only whether Plaintiff has suffered a "concrete" injury-in-fact.

To establish injury-in-fact, Plaintiff must show that she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"   Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1548 (2016) (quoting Lujan, 504 U.S. at 560).   To be "concrete," an injury "must actually exist;" it must be "real," not "abstract," but not necessarily tangible.   See Spokeo, 136 S.Ct. at 1548-49 (citation omitted).   In determining whether an alleged intangible harm constitutes a concrete injury-in-fact, both history and Congress's judgment are important.   Id. at 1549.

In enacting the FCRA, Congress identified the need to "ensure fair and accurate credit reporting" and "protect consumer privacy."   See 15 U.S.C. § 1681(b); see also Safeco Ins. Co. v. Burr, 551 U.S. 47, 52 (2007).   "Congress plainly sought to curb the dissemination of false information by adopting

procedures designed to decrease that risk." <u>Spokeo</u>, 136 S.Ct. at 1550.  The stand-alone disclosure and authorization requirements are procedures closely tied to the FCRA's overarching goals.  Congress was concerned that employers' authority to obtain consumer reports on job applicants "may create an improper invasion of privacy."  S. REP. No. 104-185, at 35 (1995).  The stand-alone disclosure requirement is designed to decrease the risk of a job applicant unknowingly providing consent to the dissemination of his or her private information.  <u>Id.</u>

The Supreme Court emphasized that "Article III standing requires a concrete injury even in the context of a statutory violation." <u>Spokeo</u>, 136 S.Ct. at 1549. The Supreme Court cautioned that "Congress'[s] role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." <u>Id.</u> For instance, a plaintiff cannot satisfy the injury-in-fact element by alleging a "bare procedural violation" that is "divorced from any concrete harm." <u>Id.</u> Instead, the plaintiff must show that the statutory violation presented a risk of real harm to the underlying concrete interest that Congress sought to protect by enacting the statute. <u>Id.</u> at 1549-50.

In this case, Defendant argues that the FCRA violation about which Plaintiff complains is insufficient to establish an injury-in-fact necessary to establish Article

12

III standing, because Plaintiff has alleged a violation of a mere procedural right under the FCRA with no resulting concrete injury.  [Doc. 43-1 at 4-10].  Plaintiff, on the other hand, asserts that because she was not provided with the statutorily mandated information in the format required—that is, Defendant failed to place the disclosure in a "document that consists solely of the disclosure" as required under 15 U.S.C. § 1681b(b)(2)(A)(i)—she sustained particularized and concrete harm in the form of an informational injury and an invasion of her privacy, both of which are sufficient for Article III standing.  [Doc. 46 at 4-13].  I will address Plaintiff's arguments in turn.

### 1.    Informational Injury

First, Plaintiff argues that she suffered a concrete informational injury as a result of Defendant's failure to provide a disclosure compliant with 15 U.S.C. § 1681b(b)(2)(A)(i).  The parties in this case have debated whether the FCRA's stand-alone disclosure requirement is a substantive right or a procedural one. [Compare Doc. 46 at 6 ("Defendant failed to provide required information by providing *misleading* extraneous information despite a substantive right to information that is 'clear.'") with Doc. 43-1 at 8 ("[W]hen a plaintiff is alleging merely that the ***form*** of the disclosure was noncompliant, that alleges the bare procedural violation that *Spokeo* prohibits) (emphases in original)].

13

One court harmonized these two competing positions, reasoning that the FCRA's requirements are both substantive and procedural, and I find this reasoning persuasive:

> The FCRA protects a consumer's substantive right to be notified of the procurement and use of a consumer report for employment purposes.  However, the requirement that the notice be in the form of a stand-alone disclosure is a procedural protection of that substantive right.  Put another way, a statutory right to information is substantive. A statutory right to receive that information <u>in a particular format</u> is procedural.

Landrum v. Blackbird Enter., LLC, 214 F. Supp. 3d 566, 571 (S.D. Tex. 2016) (emphasis in original).  Another court similarly reasoned:

> The *goal* of the stand-alone requirement is a substantive one: to ensure that certain information is in fact conveyed clearly to job applicants.  The *means* chosen to implement that goal, however, are purely formal: the portion of the statute at issue prescribes the physical format that the disclosure must take.
>
> . . .
>
> Plaintiffs nevertheless contend that they have suffered an informational injury because they have been deprived of disclosure "in the *manner* prescribed by law," *i.e.*, as a stand-alone document. (Pl. Opp. 19; emphasis added).  I am unpersuaded, because I think the argument virtually erases the distinction between a merely procedural violation and a substantive injury-in-fact.
>
> . . .
>
> I cannot hold, post-*Spokeo*, that [the defendant's] nonconformance to disclosure formatting specifications constitutes an "informational injury" sufficient to confer standing.

14

In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig., Civ. Nos. 14-7563, 15-2547, and 15-5504, 2017 WL 354023, at *6-7 (D.N.J. Jan. 24, 2017) (emphases in original).

Both of these opinions take the sensible approach of concluding that complaints about only the *form* of the disclosure amount to a complaint about a bare procedural violation, insufficient to create standing under Spokeo. If a plaintiff alleges she did not receive the information that a background check was being procured for employment purposes or could not understand that she was authorizing such a background check, such an allegation would amount to a substantive violation that would confer Article III standing.

Here, Plaintiff has not alleged that she suffered the harm addressed by Congress's promulgation of the stand-alone disclosure rule—namely, that she did not understand that she was authorizing an employer background check. See In re Michaels Stores, 2017 WL 354023 at *9; Groshek v. Time Warner Cable, Inc., 865 F.3d 884, 888 (7th Cir. 2017) (finding no concrete informational injury because the FCRA "[did] not seek to protect [the plaintiff] from the kind of harm he claims he has suffered, *i.e.*, receipt of a non-compliant disclosure"). The Amended Complaint contains no allegation that any of the extraneous information caused Plaintiff to not understand the consent she was giving; no allegation that she would

not have provided consent but for the extraneous information on the form; no allegation that the extraneous information caused her to be confused or distracted from the disclosure; and no allegation that she was unaware that a consumer report would be procured.  "Where, as here, plaintiffs do not allege that they did not see the disclosure, or were distracted from it, the allegations amount to no more than a bare procedural violation of the stand-alone requirement[,]" and such allegations do not confer standing on an informational injury theory.  See In re Michaels Stores, 2017 WL 354023 at *9; see also Landrum, 2016 WL 6075446 at *4 ("[Plaintiff] has pled only a bare procedural violation.").

In response, Plaintiff argues that her Amended Complaint contains new allegations that the Consent Form contains misleading, confusing, inaccurate, extraneous, and distracting information, in violation of the FCRA's stand-alone disclosure requirement.  [Doc. 46 at 8-13].  Defendant does not dispute that Plaintiff has alleged that the Consent Form contains misleading, extraneous information.  [Doc. 48 at 9, n.1].  Despite Plaintiff's undisputed inclusion of the terms "misleading, confusing, inaccurate, extraneous, and distracting" in her Amended Complaint, I still find her argument unpersuasive, because nowhere in the Amended Complaint does Plaintiff argue that she herself was actually misled, confused, or distracted by the contents of the Consent Form, or that she would not

have signed the Consent Form if it had not included the extraneous information. Absent such an allegation, Plaintiff has failed to plead any injury-in-fact or concrete harm to herself, as required to invoke Article III standing.  See Groshek, 865 F.3d at 888 (holding that the purpose of 15 U.S.C. § 1681b(b)(2)(A)(i) was "to decrease the risk that a job applicant would unknowingly consent to allowing a prospective employer to procure a consumer report[ ]").  Plaintiff's claim that the Consent Form was generally misleading, confusing, or distracting, without an accompanying allegation that she unknowingly consented to the procurement of a consumer report, is insufficient to constitute a concrete informational injury.

My conclusion that Plaintiff has failed to allege a concrete injury-in-fact is consistent with this district's analysis in a recent post-Spokeo opinion.  The plaintiff in LaFollette v. RoBal, Inc. alleged a similar violation of the FCRA's stand-alone disclosure requirement, claiming that the defendant failed to provide her with a document that consisted solely of the disclosure.  See Civ. No. 1:16-CV-2592-WSD, 2017 WL 1174020, at *1 (N.D. Ga. Mar. 30, 2017).  In that case, the Court granted the defendant's motion to dismiss, finding that a violation of the stand-alone disclosure requirement, without more, was insufficient to satisfy the concreteness prong of Article III's injury-in-fact requirement.  Id. at *4-5. Specifically, the Court found that the plaintiff had not established a concrete

17

injury-in-fact because she had not alleged that "the form of the disclosure caused her confusion or caused her to fail to understand the disclosure." Id. at \*4 (citations omitted).  Similarly, in this case, Plaintiff has not alleged any facts demonstrating that she was misled, confused, or distracted by the extraneous information on the Consent Form or did not understand the disclosure.

Accordingly, under Spokeo, Landrum, In re Michaels Stores, LaFollette, and other recent cases, I conclude that Plaintiff has failed to adequately plead Article III standing based on an informational injury.  See, e.g., Campbell v. Adecco USA, Inc., Civ. No. 2:16-cv-04059-NKL, 2017 WL 1476152, at \*4 (W.D. Mo. Apr. 24, 2017) (finding no concrete harm or informational injury where plaintiff "has not alleged that [the defendant]'s disclosure form did not contain the information required by the FCRA.  Rather, he claims it was not in the format required by the statute."); Stacy v. Dollar Tree Stores, Inc., Civ. No. 16-61032-CIV, 2017 WL 3531513, at \*5 (S.D. Fla. Aug. 14, 2017) (citing to numerous recent decisions holding that a violation of the FCRA's stand-alone disclosure requirement does not automatically establish a concrete injury for purposes of Article III standing).

## 2.    Invasion of Privacy

Next, Plaintiff argues that, by violating the stand-alone disclosure requirement, Defendant invaded her privacy, and that this invasion of her privacy

18

confers Article III standing.  "[A]n invasion of consumers' privacy was among the harms that Congress identified and sought to prevent by passing the FCRA."  In re Michaels Stores, 2017 WL 354023 at *9, n.17 (citations omitted).

With respect to the question of whether a bare violation of the stand-alone disclosure requirement can result in an invasion of privacy for purposes of standing, another district court recently explained:

> Everyone agrees that an applicant would have standing under the FCRA if the employer simply obtained a credit report without telling the applicant, and without the applicant's consent.  On the other hand, the applicant's consent, after being informed that the employer would be seeking such a report, vitiates any claim of a privacy violation. Either way, the issue hinges on whether the applicant received disclosure before consenting.  The employer's procurement of a consumer report would not be unauthorized (and thus an invasion of privacy) unless the applicant was *in fact* denied disclosure.  That [the defendant] did not comply with the stand-alone requirement, unless it *resulted* in a deprivation of disclosure, adds nothing.  Plaintiffs' theory collapses on itself; without the addition of nondisclosure in fact, it is indistinguishable from a bare procedural violation.

2017 WL 354023 at *10 (emphases in original); see also Landrum, 2016 WL 6075446 at *4 (holding that the plaintiff did not allege facts to support standing based on invasion of privacy where the plaintiff did not allege that he did not know what he was authorizing or that he did not authorize the report).

Here, there is no allegation of an unauthorized disclosure of Plaintiff's information or any other allegation that would support a contention that Plaintiff's

19

privacy was somehow invaded.  Plaintiff presents no factual allegations plausibly suggesting that she was misled, confused, or distracted by the extraneous information on the disclosure form, or that she would not have signed it had the disclosure complied with 15 U.S.C. § 1681b(b)(2)(A)(i).  Importantly, Plaintiff does not allege that she did not actually sign the Consent Form authorization, that she did not know what she was authorizing, or that she did not read the disclosure. Instead, she argues only that Defendant's acquisition of Plaintiff's consumer report was unlawful because the disclosure did not comply with the FCRA.  The violation Plaintiff alleges is precisely the type of "bare procedural violation" that is insufficient to confer standing.  See Spokeo, 136 S.Ct. at 1549; see also LaFollette, 2017 WL 1174020 at *5 (finding that plaintiff failed to allege that she suffered an invasion of privacy because there was no allegation that she did not actually sign the authorization or did not know what she was authorizing).

For the reasons stated, I am not persuaded by Plaintiff's arguments that she suffered an informational or privacy injury sufficient to constitute an injury-in-fact to establish Article III standing.  Accordingly, I **RECOMMEND** that Defendant's motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) be **GRANTED**.

**B.   Plaintiff's Requests for Reconsideration**

In her Opposition, Plaintiff twice asks the Court to reconsider its prior rulings from Judge May's March 24, 2017 Order.  First, Plaintiff requests that the Court reconsider the ruling that "Plaintiff has not plausibly pled that the Employment Application waiver was within the same document as the FCRA disclosure—the Consent Form."  [Doc. 40 at 11].  Plaintiff argues, in relevant part:

> Plaintiff acknowledges that the Court ruled that the five pages bearing the title "Employment Application" were not part of the FCRA disclosure because "Plaintiff ha[d] not plausibly pled that the Employment Application is the same "document" as the FCRA disclosure – the Consent Form[.]"  . . .  While Plaintiff recognizes the uphill battle she faces in respectfully requesting that the Court reconsider its ruling based on the new allegations in the FAC under the authorities previously cited, Plaintiff does so with the support of additional intervening authority.  . . .  Plaintiff respectfully requests that the Court construe all inferences in Plaintiff's favor that the "Employment Application" would appear to the consumer to be contained within the same "document" as the "Consent," and both must be considered on a motion to dismiss.

[Doc. 46 at 3-4, n.2].

Next, Plaintiff requests that the Court reconsider its prior ruling that "not even a strained reading of that provision would work as a waiver" because the provision "merely informs Plaintiff that Defendant does not discriminate."  [Doc. 40 at 11].  With respect to this prior ruling, Plaintiff argues, in relevant part:

> Plaintiff, again understanding the uphill battle of requesting reconsideration on this finding, respectfully submits that the provision

21

does not merely inform Plaintiff of something, or merely require Plaintiff to agree that it has been informed of something[.] . . . Again, Plaintiff does not make this request for the Court's reconsideration without subsequent intervening authority[.] . . . Plaintiff therefore respectfully requests, with all inferences resolved in Plaintiff's favor, that the Court find this provision constitutes an implied waiver[.]

[Doc. 46 at 9-10].

Plaintiff's requests for reconsideration are procedurally improper and untimely.  First, Plaintiff's attempt to request reconsideration of the Court's prior rulings in an opposition brief is procedurally improper.  See, e.g., Davidson v. Maraj, 609 F. App'x 994, 1002 (11th Cir. 2015) (district court did not abuse its discretion by denying plaintiff's request for leave to amend complaint contained in an opposition brief to a motion to dismiss); Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1222 (11th Cir. 1999) (per curiam) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.").  If Plaintiff sought reconsideration of the Court's prior rulings, the proper vehicle for such a request would have been a timely motion for reconsideration.  See LR 7.2E, NDGa.

Next, Plaintiff's requests for reconsideration are untimely.  Plaintiff was required to file a motion for reconsideration no later than April 21, 2017—twenty-eight days after the Order was entered on March 24, 2017.  See LR 7.2E, NDGa. Plaintiff, however, requested reconsideration for the first time on June 7, 2017 in

her Opposition, more than six weeks after her April 21, 2017 deadline to move for reconsideration.  With her deadline to file a motion for reconsideration having expired, Plaintiff's efforts to request reconsideration in her Opposition are not only procedurally improper under the rules, but they are also time-barred.

Accordingly, because Plaintiff's requests are both procedurally flawed and untimely, they are due to be denied.

## C.    Defendant's Request to Strike Portions of the Amended Complaint

Within its motion to dismiss, Defendant asks the Court to strike improper matters from the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f).  [Doc. 43-1 at 23-25].  Specifically, Defendant moves to strike all references in the Amended Complaint to (1) the Employment Agreement and (2) an express or implied liability waiver, arguing that because these issues were previously ruled on in the March 24, 2017 Order, they have no bearing on the current litigation.  [Id. at 24].  Because I have already recommended that Plaintiff's Amended Complaint be dismissed in its entirety, Defendant's request that the Court strike portions of it is moot.

## IV.    <u>CONCLUSION</u>

For the reasons stated, I **RECOMMEND** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Doc. 43] pursuant to Federal Rule of

Civil Procedure 12(b)(1) for lack of subject matter jurisdiction be **GRANTED** and that Plaintiff's Amended Complaint [Doc. 41] be **DISMISSED WITHOUT PREJUDICE**.  See LaFollette, 2017 WL 1174020 at *5-6 (concluding that plaintiff lacked Article III standing and granting defendant's motion to dismiss for lack of subject matter jurisdiction).

      **SO REPORTED AND RECOMMENDED**, this 27th day of November, 2017.

Catherine M. Salinas
United States Magistrate Judge

24